IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEMETRIUS RYAN THOMPSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 15-CV-278-JED-JFJ |
| ) | |
| JIM FARRIS, Warden,[1] ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Before the Court is Demetrius Ryan Thompson's 28 U.S.C. § 2254 habeas corpus petition (Doc. 1). For the reasons below, the Court will deny the petition.

## I. Background

Thompson challenges his state conviction for lewd molestation based on, inter alia, ineffective assistance of counsel and judicial misconduct. (Doc. 1). The conviction stems from an incident in 2010, when Thompson and two accomplices had sex with an intoxicated 14 year old girl. (Doc. 6-13 at 15); (*see also* Doc. 7-1 at 22). Thompson was charged with second degree rape (OKLA. STAT. tit. 21, § 1114); lewd molestation (OKLA. STAT. tit. 21, § 1123); forcible sodomy (OKLA. STAT. tit. 21, § 888); and furnishing alcohol to a person under 21 (OKLA. STAT. tit. 37, § 538(F)). (Doc. 6-1 at 3). The state court appointed Douglas Hamit as defense counsel (Counsel).[2] (Doc. 7-9 at 113).

---

[1] Petitioner is incarcerated at Jess Dunn Correctional Center (JDCC) in Taft, Oklahoma. (Doc. 13 at 2). Jim Farris, the warden of JDCC, is therefore substituted in place of Robert Patton as party respondent. *See* Habeas Corpus Rule 2(a). The Clerk of Court shall note the substitution on the record.

[2] Counsel was originally appointed in July 2010, but the state court terminated the appointment after a few days because Thompson posted bond. (Doc. 7-9 at 113). Counsel was reappointed in April 2011 after Thompson demonstrated he could not afford counsel. (*Id.* at 114).

In October 2011, Counsel heard rumors from jail personnel and other clients that co-defendant Robert Wade was trying to negotiate a plea agreement. (Doc. 7-9 at 11). Counsel predicted Wade would "roll over on" Thompson. (*Id.*). Thompson therefore authorized Counsel to start negotiating his own deal with Assistant District Attorney (ADA) Smith. (*Id.* at 12). To facilitate negotiations, Thompson provided a voluntary statement to ADA Smith on November 10, 2011. (*Id.* at 13-14). About eight days later, the state court reduced Thompson's bond - with no objection from the ADA - and released him on his own recognizance. (*Id.* at 15-16). On November 22, 2011, Thompson waived his right to a jury trial. (*Id.* at 16).

Plea discussions continued for the next several months. (*Id.*). Thompson hoped to avoid registering as a sex offender and to minimize jail time. (Doc. 6-8 at 2); (*see also* Doc. 7-9 at 117). On January 13, 2012, Counsel and ADA Smith met with the presiding criminal judge, Judge DeLapp, in ADA's Smith's office. (Doc. 6-8 at 4); (*see also* Doc. 7-9 at 21). They discussed a potential plea agreement wherein the Information would be amended to one count of child abuse under OKLA. STAT. tit. 21, § 843.5(A). (Doc. 6-8 at 4). The recommended sentence would be ten years, with all but 90 days deferred, and Thompson would not register as a sex offender.[3] (*Id.*). The parties disagree on the import of the meeting. Counsel later testified they wanted to know whether Judge DeLapp would even consider such an agreement before moving forward with negotiations. (Doc. 7-9 at 24). ADA Smith could not recall the meeting well, but did not believe they received any strong reaction from Judge DeLapp. (*Id.* at 89-90). Judge DeLapp recalled advising that he would have to consider Thompson's testimony at the upcoming trial of the third co-defendant, Dre Edward Bartham. (*Id.* at 104). According to Thompson,

---

[3] Unlike most other counts in the Information, a child abuse conviction under OKLA. STAT. tit. 21, § 843.5(A) would not require Thompson to register as a sex offender. *See* OKLA. STAT. tit. 57, § 582 (listing registry offenses).

Counsel represented Judge DeLapp was "okay with th[e] agreement." (*Id.* at 118).

In May 2012, Thompson testified at Barham's trial. (Doc. 7-9 at 118). He signed a plea agreement later that month, which contained the above terms. Counsel and ADA Smith presented the agreement to the state court (Judge DeLapp) at a plea hearing on June 15, 2012. (Doc. 7-3). He rejected the agreement, stating: "No, no way. Set a non-jury trial. Not after hearing his testimony." (*Id.* at 3). About two months later, Thompson entered a blind plea of nolo contendere to all four counts in the Information. (Doc. 7-4). The state court acknowledged earlier discussions about amending the Information to one count[4] but deferred consideration of the issue until after reviewing the presentence investigation report (PSI). (*Id.* at 4).

The sentencing hearing was originally set for November 16, 2012. (Doc. 7-5). Thompson appeared in the courthouse but absconded before the hearing began. (*Id.* at 3). Police eventually apprehended him, and the hearing was reset for March 8, 2013. (Doc. 7-6). ADA Smith recommended a 20 year sentence, with 10 years deferred. (*Id.* at 5). He took the position because Thompson jumped bail and because a co-defendant (presumably Wade)[5] received a 20-year sentence. (*Id.* at 4-5). The state court was prepared to sentence Thompson to 20 years, with 8 years deferred, and require him to register as a sex offender. (*Id.* at 7). However, Thompson interrupted and stated he understood the charges were amended to one count of child abuse, which would not require the registration. (*Id.* at 10). The state court noted child abuse was unavailable because the custodial element was not met, but agreed the conviction would only reflect one charge of lewd molestation. (*Id.* at 12). The hearing was adjourned to allow Thompson to consider whether to proceed under those circumstances. (Doc. 7-6 at 13-14).

---

[4] The court did not specify what that count would be.

[5] Following trial, the state court sentenced Barham to 17 years imprisonment. (Doc. 10 at 16).

Thompson decided to proceed with the plea and on April 19, 2013, the state court sentenced him in accordance with its earlier proposal (20 years total with 8 deferred, plus a registry requirement). (Doc. 7-7).

Thompson, through Counsel, filed a timely request to withdraw the plea, which was denied. (Doc. 7-8). Thompson appealed, raising ineffective assistance of counsel during the plea process. (Doc. 6-7). The Oklahoma Court of Criminal Appeals (OCCA) remanded the matter for an evidentiary hearing before a new judge. (*Id.*). The state court (Judge Steidley) appointed new counsel and heard testimony by Thompson, Counsel, ADA Smith, and Judge DeLapp. (Doc. 7-9). By an order entered September 22, 2014, the state court concluded, inter alia, that Counsel rendered effective assistance in connection with the plea. (Doc. 6-8 at 8). The OCCA agreed and affirmed Thompson's judgment and sentence. (Doc. 6-11 at 9).

Thompson filed the instant § 2254 petition (Doc. 1) on May 18, 2015. He identifies the following grounds for relief:

Ground 1(a): Counsel rendered ineffective assistance, which rendered the plea involuntary.

Ground 1(b): The state court should have appointed conflict counsel after Thompson moved to withdraw the plea.

Ground 2: Thompson is entitled to enforce the original, negotiated plea agreement.

Ground 3: Such agreement is enforceable because Thompson testified against Barham.

Ground 4: The state court inappropriately participated in plea negotiations.

(Doc. 1 at 4, 6, 7, and 9).

On June 22, 2015, Respondent filed an answer (Doc. 6) along with copies of the state court record (Doc. 7). Respondent concedes, and the Court finds, that Thompson timely filed his

4

federal habeas petition, *see* 28 U.S.C. § 2244(d)(1), and exhausted state remedies by presenting these claims to the OCCA in his direct appeal, *see id.* § 2254(b)(1)(A). (Doc. 6 at 2). Respondent contends, however, that Thompson's request for habeas relief fails on the merits. (Doc. 6). Thompson filed a reply brief (Doc. 10) on August 21, 2015.[6]

## II. Discussion

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[7] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal

---

[6] The reply elaborates on Thompson's original arguments and appears to raise a new ground based on "excessive sentencing." (Doc. 10 at 15). Thompson acknowledges the sentence falls within the prescribed range but argues the equities of the case justify a reduction, including Counsel's ineffective and inappropriate conduct. Because the Court finds no prejudicial error by Counsel and because the "excessive sentencing" allegation appears in the reply brief, the Court declines to separately address this new claim.

[7] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### A. Ineffective Assistance of Counsel (Ground 1(a))

Thompson first argues Counsel failed to adequately research the Oklahoma child abuse statute, OKLA. STAT. tit. 21, § 843.5(A). (Doc. 1 at 4). Although the state court found Thompson was not a "person responsible" for the victim under § 843.5(A), he argues the same subsection

6

prohibits *any person* from willfully injuring a minor. (Doc. 10 at 6-7). Counsel's misunderstanding of that point allegedly ruined Thompson's chances of obtaining a beneficial plea deal and caused him to plead nolo contendere to the lewd molestation charge "with[out] full knowledge of the circumstances." (*Id.*); (*see also* Doc. 10 at 10).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend VI. A deprivation of that right occurs where: (1) counsel's performance was deficient and (2) such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance involves "serious errors" that violate "prevailing professional norms." *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 694). This can include the failure to adequately explain the consequences of a plea, which must "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (quotations omitted). To demonstrate prejudice in the plea context, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Standing alone, the *Strickland* standard is "highly deferential." *Strickland*, 466 U.S. at 689. Coupled with § 2254(d)(1), this Court's review of the OCCA's ruling is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (A "doubly deferential judicial review … applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard."). "[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [this Court] defer[s] to the state court's determination that counsel's performance was not deficient and, further, … to the attorney's decision in how to best represent a client." *Byrd v. Workman*,

645 F.3d 1159, 1168 (10th Cir. 2011).

The OCCA concluded Counsel did not make any misrepresentations regarding the negotiated plea; the nolo contendere plea was voluntary; and Counsel's failure to research the child abuse statute did not impact the outcome of Thompson's plea proceedings. (Doc. 6-11 at 4, 8). Viewing the decision with double deference, the Court agrees. Counsel, ADA Smith, and Judge DeLapp all indicated the plea agreement was not approved at the January 2012 meeting, and there is no clear evidence to the contrary. (Doc. 7-9 at 24, 89-90, 104). The OCCA found, and the record confirms, that Counsel advised Thompson to testify against Barham in exchange for a favorable *offer*. (Doc. 6-11 at 5); (*see also* Doc. 7-9 at 25). The record also reflects the state court rejected the negotiated plea on June 15, 2012, well before scrutinizing the elements of the child abuse statute. The decision was based on Thompson's testimony at Barham's trial. (Doc. 7-3 at 3 ("No, No way…. Not after hearing his testimony.")). Therefore, Counsel's performance did not prejudice Thompson with respect to the negotiated plea.

There is also no indication that Counsel could have achieved a better outcome at a later time. The state court first objected to using the child abuse statute during the March 8, 2013 sentencing hearing, nearly a year after rejecting the negotiated plea. (Doc. 7-6 at 12). By that point, Thompson had jumped bail, and the ADA revoked its earlier, favorable recommendations with respect to penalties. (*Id.* at 4-5). Co-defendants Barham and Wade had also received 17 and 20 years, respectively, for their participation in the crime and would likely testify against Thompson at trial. (*Id.* at 4-5). Under these circumstances, the Court cannot find a reasonable probability that Thompson would have obtained his desired outcome (*i.e.,* a child abuse conviction, with no registry requirement), had Counsel researched OKLA. STAT. tit. 21, § 843.5(A) more carefully.

Finally, the record reflects the nolo contendere plea was voluntary, notwithstanding any errors by Counsel. Before finalizing the plea, the state court announced the exact penalty it intended to impose - 20 years imprisonment, with eight years suspended - and informed Thompson he would be required to register as a sex offender. (Doc. 7-6 at 7, 10). The state court also reiterated the conviction would be for lewd molestation, not child abuse, and recessed the March 8, 2013 hearing to allow Thompson to consider his options. (*Id.* at 13). Counsel testified that after the hearing, he advised Thompson of two options, a bench trial or a blind plea. (Doc. 7-9 at 33). Counsel also advised that the victim was sympathetic, Barham and Wade would likely testify, and Barham - who only faced two of the four charges against Thompson - received 17 years following trial. (*Id.* at 34). Thompson decided to finalize his plea and engaged in the following colloquy when he returned for the April 19, 2013 hearing:

> Q: We have sentencing on the [lewd molestation] case …, previously entered a plea on. And then he failed to appear for sentencing so there's a bail jumping charge as well. He's also entering a plea on that today.
>
> A. Yes, sir.
>
> Q: [W]e have one count of lewd molestation, with 20 years with 12 years to do, balance suspended, $1,000 fine, a $500 VCA, and the court costs, the penalty assessment, the OIDS fee, the PSI fee, credit for time served…. So you understand that, Mr. Thompson.
>
> A: Yes, sir.
>
> Q: And there will be fines and costs in the new [bail jumping] case. … So do you wish to proceed with sentencing on both these cases today.
>
> A: Yes, sir.
>
> …
>
> Q: [H]ave you understood all the questions I've asked you.
>
> A: Yes, sir.

9

Q: Have your answers been freely and voluntarily given.

A: Yes, sir.

(Doc. 7-7 at 3, 5-8).

Petitioner does not explain how, in light of the foregoing, he still misunderstood the consequences of his plea when he finalized the matter on April 19, 2013. The Court will therefore not disturb the OCCA's conclusion that Counsel rendered effective assistance and adequately explained the consequences of the plea. Habeas relief is unavailable on Ground 1(a).

**B. Failure to Appoint Conflict Counsel (Ground (1(b)).**

In Ground 1(b), Thompson alleges the state court failed to appoint conflict counsel to prosecute his motion to withdraw the plea. (Doc. 1 at 4). Respondent argues Ground 1(b) is moot because the OCCA remedied any error by appointing conflict counsel and remanding the case before rending a decision on appeal. (Doc. 6 at 26).

A case is moot if "events occur" that "resolve the controversy underlying" the case. *United States v. Dominguez–Carmona*, 166 F.3d 1052, 1055 (10th Cir. 1999), *overruled on other grounds by United States v. Meyers*, 200 F.3d 715 (10th Cir. 2000). To determine mootness in the habeas context, the Court looks to whether it can "afford[] [petitioner] … more relief than … he received from the Oklahoma Court of Criminal Appeals." *Dubuc v. Oklahoma Court of Criminal Appeals*, 91 F.3d 159 (10th Cir. 1996) (unpublished).[8] The Tenth Circuit has repeatedly found habeas claims to be moot where the state appellate court corrected the error through a remand. *Id.; See also Hayes v. Evans*, 70 F.3d 85 (10th Cir. 1995) (determining habeas claims were moot where OCCA found error and remanded for a new trial); *Cheatham v. Cline,* 543

---

[8] The Court cites this decision, and other unpublished decisions herein, as persuasive authority. *See* FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

Fed.Appx. 775, 777 (10th Cir. 2013) (unpublished) (holding habeas claims were moot because Kansas appellate court remanded criminal case for new proceeding).

Thompson argues conflict counsel was necessary during the withdrawal proceedings to demonstrate how Counsel tainted the plea. (Doc. 1 at 4); (*see also* Doc. 6-3 at 1). The appropriate remedy, should this Court agree, would be to grant a conditional writ requiring the appointment of conflict counsel. *See Hayes,* 70 F.3d at 86 (noting a conditional writ can be used to require discrete action by state court); *McFarland v. Yukins,* 356 F.3d 688, 712-13 (6th Cir. 2004) (conditional writ is appropriate remedy upon finding of ineffective assistance and attorney conflicts); Brian R. Means, *Federal Habeas Manual,* § 13.44 (encouraging courts to craft a habeas remedy that would "put the defendant back in the position he would have been in if the Sixth Amendment violation had not occurred."). The OCCA already afforded such relief by remanding the case so that conflict counsel could explore: (1) whether there was a negotiated plea; (2) whether Judge DeLapp approved the plea; and (3) Counsel's ineffective assistance. Ground 1(b) is therefore moot.

**C. Enforcement of the Plea (Grounds 2 and 3).**

Thompson next asks the Court to enforce the original negotiated plea, which contemplates 90 days in jail and no registry requirement. (Doc. 1 at 6-7). Much of the OCCA proceedings and filings in this case focus on who promised what to whom, and when the deal was actually made. (Doc. 6 at 6-16); (*see also* Doc. 10). Those details are not relevant, however, unless Thompson can demonstrate a violation of federal law. *See* 28 U.S.C. § 2254(a).

It is well established that a negotiated plea confers no constitutionally protected interest on the defendant until it is reduced to a judgment of the court. *See United States v. Novosel*, 481 F.3d 1288, 1292 (10th Cir. 2007) ("A plea bargain standing alone is without constitutional

11

significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest.") (quoting *Mabry v. Johnson*, 467 U.S. 504, 507 (1984)). Once a plea bargain is made, there is also no "federal right that the judge accept it." *Missouri v. Frye,* 566 U.S. 134, 148 (2012). Oklahoma law similarly allows trial judges to reject a tendered plea. *See Stewart v. State,* 568 P.2d 1297, 1330 (Okla. Crim. App. 1977). Therefore, the only way to obtain habeas relief in connection with a negotiated plea is to demonstrate a constitutional violation beyond mere rejection of the plea, such as ineffective assistance of counsel or a due process violation. *See, e.g., Lafler v. Cooper,* 566 U.S. 156, 168 (2012) (acknowledging "defendants have no right to be offered a plea," but analyzing whether counsel's ineffective assistance tainted the plea proceedings); *Bordenkircher v. Hayes*, 434 U.S. 357, 363-65 (1978) (analyzing a due process violation based on prosecutor's threat during plea negotiations).

To support Grounds 2 and 3, Thompson relies on essentially the same defects as alleged in Ground 1(a). He contends Judge DeLapp approved the negotiated plea agreement at the January 2012 office meeting, and that Counsel's misrepresentations induced him to testify against Barham in May 2012. (Doc. 1 at 6-7). As discussed above, the record supports the OCCA's findings that: (a) Judge DeLapp did not approve any negotiated plea; (b) Thompson did not testify against Barham based on any misrepresentations; and (c) Counsel did not otherwise render ineffective assistance. (*See* supra, Section A). Thompson is therefore not entitled to habeas relief in connection with the negotiated plea, and the Court will deny relief on Grounds 2 and 3.

**D. State Court Involvement in Plea Negotiations (Ground 4).**

Thompson finally argues Judge DeLapp violated the Due Process Clause by "injecting himself in … plea negotiations." (Doc. 1 at 9). Part of the argument appears to focus on Judge

DeLapp's rejection of the negotiated plea and misinterpretation of the child abuse statute. (Doc. 7-6 at 12). The OCCA found, and the record reflects, that Judge DeLapp rejected the negotiated plea based on Thompson's testimony and not on the nature of the proposed charge. (Doc. 6-11 at 6); (*see also* Doc. 7-3 at 3). Further, as noted above, a trial judge's rejection of a negotiated plea does not implicate any federal rights. *See Missouri v. Frye,* 566 U.S. 134, 148 (2012).

Thompson also contends Judge DeLapp inappropriately determined the Information should be amended to reflect one charge of lewd molestation. (Doc. 6-5 at 42-44); (*see also* Doc. 7-6 at 12). Construed liberally, Thompson argues the prosecutor, not the judge, should make that determination. The OCCA did not expressly address the merits of this argument in its summary opinion. (Doc. 6-11). However, because the OCCA denied all requested relief, the Court presumes it "adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86 (2011). *See also Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) ("[A] state court reaches a decision 'on the merits' even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion.").

Thompson is correct that "[c]harging decisions are primarily a matter of discretion for the prosecution." *United States v. Robertson*, 45 F.3d 1423, 1437 (10th Cir. 1995). "Case law … establishes that separation of powers mandates the judiciary remain independent of executive affairs and vice versa." *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Nevertheless, there is no Supreme Court precedent establishing a constitutional violation where, as here, the judge selects which charges to dismiss (here rape, sodomy, and giving alcohol to a person under 21) with the prosecutor's express consent. Even *Robertson* recognizes that "charging decisions … also implicate the sentencing discretion of district courts." 45 F.3d at

13

1483. Thompson has therefore failed to established the OCCA's decision is contrary to clearly established federal law, and no relief is available with respect to Ground 4.

## III. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons discussed above, Thompson has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Jim Farris, Warden, in place of Robert Patton, Director, as party respondent.

2. The petition for a writ of habeas corpus (Doc. 1) is denied.

3. A certificate of appealability is denied.

4. A separate judgment will be entered herewith.

ORDERED this 18th day of September 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE